IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ABEL LUCIO, #R15681, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 11-cv-0979-MJR |
| ) | |
| DOCTOR SANTOS, DOCTOR AARON, ) | |
| ASSISTANT WARDEN FLAGG, ) | |
| OFFICER J. STEWART, ) | |
| OFFICER J. LOERA, ) | |
| OFFICER WALKER, ) | |
| OFFICER MEYER, ) | |
| JOHN DOE 1, JOHN DOE 2, ) | |
| JOHN DOE 3, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM AND ORDER**

**REAGAN, District Judge:**

Plaintiff Abel Lucio, an inmate in Hill Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff is serving a 30-year sentence for home invasion concurrently with a 15-year sentence for armed robbery. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>   (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>   (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

**The Complaint**

The following is an overview of the allegations in Plaintiff's complaint (Doc. 1). On May 5, 2010, Plaintiff was transferred to Centralia Correctional Center ("Centralia") from Danville Correctional Center ("Danville") for safety concerns after he, working with the Internal Affairs Unit as an informant, reported Latin King gang members' contraband. The incidents complained of occurred while Plaintiff was incarcerated in Centralia.

On July 1, 2010, Plaintiff was approached by two inmates, Rosado and Mata, who accused him of having been a confidential informant at Danville and of giving information on the Latin Kings there. Rosado and Mata, who were also Latin King members, told Plaintiff that he was "going to pay for snitching on [the Danville Latin Kings]" (Doc. 1, p. 4). The inmates then grabbed him. Rosado pulled down Plaintiff's underwear while Mata held Plaintiff. At this point, Plaintiff felt a "hard, foreign object poking his rectum." After the assault, Rosado showed Plaintiff an envelope listing Plaintiff's family's addresses and told him that he was going to find and kill them.

Plaintiff wrote an emergency note requesting help at 5:20 a.m. on July 2, 2010, the day following the assault by Rosado and Mata. He gave the note to Defendant John Doe 1, correctional officer, but no staff member spoke to him or otherwise investigated his safety concerns. The same day, at 7:45 p.m., Plaintiff wrote another emergency note which contained a detailed account of the sexual assault he suffered.

Rosado noticed Plaintiff's second emergency note and asked to see it. When Plaintiff refused, Rosado began "poking Plaintiff in the head real hard" (Doc. 1, p. 5). Plaintiff tried to get away from Rosado, but Rosado grabbed the back of his shirt. Plaintiff was "extremely terrified," and struck Rosado in the face with a Bible before running out of the cell. Plaintiff ran to two correctional officers who protected Plaintiff from Rosado but failed to tell Internal Affairs that Rosado had threatened to kill Plaintiff during the altercation.

Around 10:00 p.m. on July 2, 2010, Plaintiff was in the healthcare unit, where he told the nurse that he was sexually assaulted by two inmates. Defendant Santos came into the room wearing rubber gloves and carrying a large object in his hand. Plaintiff told Santos that he believed Rosado and Mata had used something other than their penises or fingers to sexually

assault him. Additionally, Plaintiff told Santos that because of the sexual assault he had suffered, he was not comfortable with Santos putting his fingers into his rectum. However, Santos gave Plaintiff a direct order to lie down. When Plaintiff tried to refuse, Defendants John Doe 2 and John Doe 3 threatened to spray Plaintiff with mace and write him a disciplinary ticket if he did not comply. Plaintiff, therefore, complied with Santos' order, allowing Santos to penetrate his rectum with his fingers and with the large object that had been in his hand upon entering the room. After the examination, Plaintiff felt "violated all over again," and would never forget how Santos violated him after he had just been assaulted by Rosado and Mata (Doc. 1, p. 7).

Following the exam, Plaintiff was placed on investigation status and moved to segregation. On July 3, 2010, while Plaintiff was in segregation, Defendants Loera, Walker and Meyer (Correctional Officers) came to his cell, joking and laughing about his sexual assault. Plaintiff, who had believed that the information would be kept confidential, was so upset about this that he attempted suicide by overdosing on Tylenol on the night of July 3, 2010. Plaintiff was transferred to Saint Mary's Good Samaritan Hospital following the suicide attempt.

On July 5, 2010, Plaintiff returned to Centralia from the hospital. He was placed in a cell with no clothes, sheets, blanket or mattress. The entire cell was filthy and the light was never turned off. Despite Plaintiff's requests for clothing and to be removed from the cell, he remained there for three days. The cell's "filthy hard bunk" aggravated Plaintiff's preexisting injury, a separated shoulder, and although Plaintiff asked Santos for pain medication, Santos refused to provide it for 80 days (Doc. 1, p. 8).

Thinking it was the only way to receive help, Plaintiff began a hunger strike on July 8, 2010. Plaintiff also sent a letter to his previous attorney and asked him to send a copy of the letter to anyone who might help his situation.

On July 9, 2010, Correctional Officer Stewart convinced Plaintiff to sign a document that authorized a lie detector test. After signing the document, Plaintiff was returned to his cell, where the harassment from Loera, Walker and Meyer worsened. These Defendants beat Plaintiff's cell door, joked about his sexual assault, spit at him and called him a "sissy." Defendant Aaron, a psychologist, met with Plaintiff, though Plaintiff does not specify the date on which this occurred. Plaintiff hoped Aaron would stop Loera, Walker and Meyer from harassing him, but Aaron did not do so.

Plaintiff took the lie detector test on July 13, 2010. On July 14, 2010, an Internal Affairs Officer and a Lieutenant told Plaintiff him that he did well on the test and that the investigation was over. However, Plaintiff was not removed from segregation or from investigation status, and the harassment continued. As a result, he began another hunger strike on July 28, 2010, which lasted until the night of July 29, 2010.

Plaintiff began filing grievances after July 28, 2010. He sent copies of the grievances to the Counselor's Office, Internal Affairs, Stewart and Assistant Warden Flagg, but received no response. Instead, Plaintiff was retaliated against as a result of filing the grievances. Stewart retaliated by writing him a disciplinary ticket for insolence and for assaulting Rosado. Plaintiff, in turn, filed a grievance with his counselor and with Flagg regarding the allegedly retaliatory disciplinary ticket.

Plaintiff was found guilty of all disciplinary charges despite the facts that he "passed" the lie detector test and that another inmate, a confidential informant, told Internal Affairs that Rosado and Mata had threatened Plaintiff's life. Plaintiff was placed in segregation for six months and was demoted to C grade for six months. Additionally, he was transferred to a maximum security facility and six months' good-time credit was taken from him.

Plaintiff seeks an injunction ordering the Illinois Department of Corrections to refrain from any retaliation resulting from the filing of this Complaint. He also seeks compensatory and punitive damages.

**Discussion**

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into seven counts. The parties and the Court will use the Court's designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Count 1 – Failure to Protect**

Plaintiff claims that Defendants failed to protect him from the initial sexual attack and from Rosado's threat to kill him.

In *Farmer v. Brennan*, 511 U.S. 825, 833 (1994), the Supreme Court held that "prison officials have a duty … to protect prisoners from violence at the hands of other prisoners" (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). However, not every harm caused by another inmate translates into constitutional liability for the correctional officers responsible for the prisoner's safety. *Farmer*, 511 U.S. at 834. In order for a plaintiff to succeed on a claim for failure to protect, he must show that he is incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that danger. *Id.; Pinkston*, 440 F.3d at 889. A plaintiff also must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing that he complained to prison officials about a *specific* threat to his safety. *Pope v. Shafer,* 86 F.3d 90, 92 (7th Cir. 1996). In other words, Defendants had to know that there was a substantial risk that those who attacked Plaintiff would do so, yet failed to take

any action. *See Sanville v. McCaughtry*, 266 F.3d 724, 733-34 (7th Cir. 2001). However, conduct that amounts to negligence or inadvertence is not enough to state a claim. *Pinkston*, F.3d at 889 (discussing *Watts v. Laurent*, 774 F.2d 168, 172 (7th Cir. 1985)).

Here, Plaintiff was assaulted by Rosado twice. However, the first attack occurred without warning, and Defendants could not have been aware of a specific threat to Plaintiff's safety. In the second attack, which involved Rosado's poking Plaintiff, Plaintiff was uninjured. If Plaintiff were bringing a claim for failure to protect after having been injured in another attack, following the specific threats he has described herein and reported to prison officials, he would have pleaded sufficient facts for his deliberate indifference claim to proceed beyond preliminary review. Additionally, if Plaintiff had been denied protective custody after these events, he could be eligible for injunctive relief. In this case, however, Plaintiff does not claim to have been injured by Rosado's poking in the second incident, nor does he describe any damages suffered from that encounter. Furthermore, Plaintiff was placed in segregation, and thus removed from any threat posed by Rosado, immediately after the second incident. Therefore, it appears that Defendants did not fail to protect Plaintiff after he brought the threat to their attention. Accordingly, Plaintiff's failure-to-protect claim shall be dismissed without prejudice.

However, Plaintiff shall be allowed the opportunity to submit an amended complaint, within 30 days of the entry of this order, to present any facts which may exist that would sustain his failure-to-protect claim. If the amended complaint still fails to state a claim, or if Plaintiff does not submit an amended complaint, the dismissal of this count shall become a dismissal with prejudice. The amended complaint shall be subject to review pursuant to § 1915A.

**Count 2 – Battery**

Following the sexual assault by Rosado and Mata, Plaintiff asserts that Santos inserted his fingers and a large object into Plaintiff's rectum after Plaintiff made clear that he did not want Santos to do so.

Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)).

Under Illinois state law, "[a] battery occurs when one 'intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual.'" *Smith v. City of Chicago*, 242 F.3d 737, 744 (7th Cir. 2001) (quoting 720 ILL. COMP. STAT. 5/12–3(a)). In the instant case, Plaintiff claims that Santos inserted his fingers and a large object into Plaintiff's rectum after Plaintiff refused the examination. At the pleadings stage, Plaintiff has stated, at minimum, a claim for physical contact of an insulting or provoking nature. Santos's alleged battery against Plaintiff derives from the same nucleus of operative facts as Plaintiff's federal constitutional claims. Although some of those claims are subject to dismissal, others will receive further consideration. Accordingly, Plaintiff's battery claim against Santos will be allowed to proceed.

**Count 3 – Threats/Verbal Harassment/Medical Privacy**

Plaintiff claims that Defendants John Doe 2 and John Doe 3 threatened to spray him with mace and write him a disciplinary ticket if he did not comply with Santos's order to lie down. He also claims that Defendants John Doe 2, John Doe 3, and Santos failed to keep his sexual assault confidential. After Plaintiff's examination by Defendant Santos, Defendants Walker, Loera and Meyer harassed him on multiple occasions by making jokes about his sexual assault, beating his cell door, spitting at him and calling him names. He claims that Defendant Aaron failed to stop this harassment.

In some circumstances, a threat may rise to the level of cruel and unusual punishment—for example, when the threat is accompanied by brandishing a weapon. *See Dobbey v. Ill. Dept. of Corr.*, 574 F.3d 443, 445 (7th Cir. 2009); *Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir. 1992). At the other end of the spectrum, an "idle and laughing threat," or verbal harassment alone will not give rise to a constitutional claim. *See DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000); *Dobbey*, 574 F.3d at 446 (brief display of noose by white guard during a card game in officers' control room, in view of African-American plaintiff, was not a credible threat to kill or injure plaintiff). Courts must apply an objective standard to determine whether a particular threat, given all the circumstances, may amount to a constitutional violation. *Dobbey*, 574 F.3d at 445. The pertinent inquiry is whether a "reasonable" victim would fear for his life as a result of the threat; not whether this plaintiff experienced actual fear. *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006)).

Though John Doe 2 and John Doe 3 threatened Plaintiff with the use of mace, that threat, if carried out, would not have constituted deadly force. Thus, under the *Dobbey* standard, a reasonable inmate would not have feared for his life under the circumstances Plaintiff describes. Accordingly, Plaintiff does not articulate a constitutional claim against John Doe 2 and John Doe 3 for the threat to use mace on him.

Further, while the verbal harassment by Walker, Loera and Meyer was repugnant, it does not rise to the level of a violation of constitutional rights. *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) (citations omitted) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws."). Correctional officers spitting at a prisoner is also repugnant and far from conduct that the Court condones. However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillian,* 503 U.S. 1, 9 (1992). Defendants allegedly spitting on Plaintiff can only be described as being *de minimis* and, consequently, excluded from constitutional recognition. *Hairston v. Walker*, 2007 WL 4293072, *3 (S.D.Ill. 2007). Because these acts do not rise to the level of constitutional violations, Aaron's failure to stop such harassment was likewise not a violation of Plaintiff's constitutional rights.

However, Plaintiff notes that Defendants Walker, Loera, and Meyer somehow obtained the knowledge that Plaintiff had been sexually assaulted, a fact that Plaintiff expected would be held in confidence. Plaintiff had disclosed the information about his assault to Defendants Santos when he sought medical treatment, and John Doe 2 and John Doe 3 were present during Plaintiff's examination by Defendant Santos. "The Seventh Circuit has yet to squarely address the issue of whether an inmate has a privacy right in his medical records, *see*

*Massey v. Helman,* 196 F.3d 727, 742 n. 8 (7th Cir.1999); *Anderson v. Romero,* 72 F.3d 518, 523 (7th Cir.1995)." *Munson v. Feinerman* 2009 WL 303047, *3 (S.D. Ill. 2009). At this stage of the litigation, Plaintiff has stated a potential claim for violation of his right to privacy in his medical records, that is not subject to dismissal. Accordingly, this portion of the claim shall proceed against Defendants Santos, John Doe 2, and John Doe 3. As noted above, however, the verbal threat/harassment claims shall be dismissed with prejudice, as will Defendants Walker, Loera, and Meyer.

**Count 4 – Inhumane Conditions of Confinement**

Plaintiff claims that he was placed in a cell without clothing, sheets, a blanket, or a mattress for three days. He claims that the light was never turned off in the cell.

In a case involving conditions of confinement in a prison, two elements are required to establish violations of the Eighth Amendment's cruel and unusual punishments clause. First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer*, 511 U.S. at 834. The second requirement is a subjective element– establishing a defendant's culpable state of mind. *Id.*

> [N]either negligence nor strict liability is the appropriate inquiry in prison-conditions cases. . . . prisoners who contest the conditions of their confinement under the eighth amendment must establish that their custodians either established the conditions to inflict wanton pain or are deliberately indifferent to whether the conditions have these effects. The eighth amendment is concerned with "punishment", and . . . showing a culpable mental state is essential in establishing that conditions of confinement are part of the "punishment".

*Steading v. Thompson*, 941 F.2d 498, 499-500 (7th Cir. 1991), *citing Wilson v. Seiter*, 501 U.S. 294 (1991).

Not all prison conditions trigger Eighth Amendment scrutiny – only unquestioned and serious deprivations of basic human needs like food, medical care, sanitation, and physical safety, *Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981); *See also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992); *Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir. 1987).

In addition to showing objectively serious conditions, a plaintiff must also demonstrate the subjective component to an Eighth Amendment claim, in other words, the intent with which the acts or practices constituting the alleged punishment are inflicted. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). The subjective component requires that a prison official had a sufficiently culpable state of mind. *Wilson*, 501 U.S. at 298; *see also McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994). In conditions of confinement cases, the relevant state of mind is deliberate indifference to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Wilson*, 501 U.S. at 303; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *DelRaine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994). The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm. *Farmer*, 511 U.S. at 842. A failure of prison officials to act in such circumstances suggests that the officials actually want the prisoner to suffer the harm. *Jackson*, 955 F.2d at 22.

In the instant case, Plaintiff claims that he spent three days in a cell without clothing, sheets, blanket, or mattress, and that the light in the cell was never turned off. These measures must be considered in light of Plaintiff's status: he had just been discharged from the hospital following a suicide attempt. The conditions described by Plaintiff were a justified

response to a suicide attempt and were designed to keep Plaintiff from harming himself again. Under these circumstances, Defendants cannot be considered to have deprived Plaintiff of "the minimal civilized measure of life's necessities."

Moreover, that Plaintiff was confined in a filthy cell for a period of three days does not rise to the level of a constitutional violation. *Goodvine v. Grams*, WL 4279640, *7-8 (W.D.Wis. 2008) (citing *Harris v. Fleming,* 839 F.2d 1232, 1235 (7th Cir.1988) (depriving prisoner of toilet paper, soap, toothpaste and toothbrush while keeping him in filthy, roach-infested cell for a period of several days was not a constitutional violation); *Morissette v. Peters,* 45 F.3d 1119, 1122-23, n. 6 (7th Cir. 1995) (plaintiff's "filthy" cell and inadequate cleaning supplies did not violate Eighth Amendment); *Geder v. Godinez,* 857 F.Supp. 1334, 1341 (N.D.Ill.1995) (defective pipes, sinks and toilets, improperly cleaned showers, stained mattresses, accumulated dust and dirt and infestation by roaches and rats did not rise to level of Eighth Amendment violation, alone or in combination); *Wilson v. Schomig,* 863 F.Supp. 789, 794-95 (N.D.Ill.1994) (cell containing dirt, dust, roaches, a leaking roof during rainstorms and urine-stained mattress did not violate the Eighth Amendment).

Additionally, Plaintiff does not identify Defendants who placed him in the cell, nor does he allege that any Defendant was aware that the cell's conditions were aggravating his shoulder injury. Therefore, there is no evidence that any prison official had a culpable state of mind in placing Plaintiff in this cell. Accordingly, Plaintiff's claim for inhumane conditions of confinement shall be dismissed without prejudice.

**Count 5 – Retaliation**

Plaintiff claims that Stewart retaliated against him for filing grievances over being held in segregation, by writing him the disciplinary ticket charging him with insolence and

assault.

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt*, 224 F.3d at 607; *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). Furthermore, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). Naming the act of retaliation is all that is necessary to state a claim of improper retaliation. *Id.* A complaint that provides a short, clear statement of the relevant facts complies with the Federal Rules of Civil Procedure, and thus cannot be dismissed because it does not allege all facts necessary to clearly establish a valid claim. *Id.*

Here, Plaintiff alleges Stewart wrote him a disciplinary ticket in retaliation for his protected activity of filing grievances. Accordingly, Plaintiff's claim of retaliation against Stewart shall be allowed to proceed.

**Count 6 – Deliberate Indifference to Medical Needs**

Plaintiff claims that Santos denied him pain medication for 80 days after Plaintiff aggravated a separated shoulder injury.

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825, 825 (1994); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Deliberate indifference involves a two-part test. The plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical

needs, which is a subjective standard.  *Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000). Severe, ongoing pain is an objectively serious medical condition.  *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).  As to the subjective component of an Eighth Amendment claim, "a delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain."  *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010); *see also Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996)

Here, Plaintiff alleges that he tried to get pain medication for his separated shoulder but that Santos refused to provide it to him for 80 days.  The refusal to provide medication may have unnecessarily prolonged Plaintiff's pain; thus, Plaintiff's claim against Santos for deliberate indifference shall receive further consideration.

**Count 7 – Due Process**

**A.  Segregation, C Grade, Transfer**

Plaintiff was found guilty of insolence and of assaulting Rosado, despite the fact that he "passed" his lie detector test and that another inmate (a confidential informant) told Internal Affairs that Rosado and Mata had threatened Plaintiff's life.  Plaintiff was placed in segregation for six months and was demoted to C grade for six months.  Additionally, he was transferred to a maximum security facility.

Prison disciplinary hearings satisfy procedural due process requirements where an inmate is provided: (1) written notice of the charge against the prisoner twenty-four hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the

reasons for the action taken against the prisoner. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974); *Cain*, 857 F.2d at 1145.

Not only must the requirements of *Wolff* be satisfied, but the decision of the disciplinary hearing board must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). To determine whether this standard has been met, courts must determine whether the decision of the hearing board has some factual basis. *Webb v. Anderson*, 224 F.3d 649 (7th Cir. 2000).

Here, Plaintiff makes no allegation that the hearing failed to comply with the *Wolff* requirements. Plaintiff appears to assert that the lie detector results and another inmate's testimony should have led to a finding that he was innocent of the charges. However, he does not assert that the guilty finding lacked evidentiary support. Accordingly, he fails to state a claim upon which relief may be granted, and this portion of the claim shall be dismissed without prejudice.

### B. Loss of Good Time Credit

In addition to the punishment described above, Plaintiff had six months' good time taken from him as a result of being found guilty of the disciplinary charges.

A loss of good time credit implicates a liberty interest because such a loss potentially affects the length of Plaintiff's sentence. As such, Plaintiff would present a cognizable due process claim regarding good time credit revoked in the disciplinary proceeding, if that hearing had been procedurally flawed. However, the proper method for challenging the revocation of good time credit is habeas corpus, but only after Plaintiff has exhausted his remedies through the Illinois state courts. *See, e.g., Heck v. Humphrey*, 512 U.S. 477, 480-81 (1994). The Illinois courts have recognized mandamus as an appropriate remedy to compel

prison officials to award sentence credit to a prisoner. *See Turner-El v. West*, 811 N.E.2d 728, 733 (Ill. App. 2004) (citing *Taylor v. Franzen*, 417 N.E.2d 242, 247, *aff'd on reh'g*, 420 N.E.2d 1203 (Ill. App. 1981)). The State of Illinois must first be afforded an opportunity, in a mandamus action pursuant to 735 ILCS 5/14-101 *et seq.* to consider the merits of Plaintiff's claim. Accordingly, the claim for loss of good time credit is dismissed without prejudice to Plaintiff bringing his claims in a properly filed habeas corpus action, *but only after he has exhausted his state court remedies*.

### Defendant Flagg and John Doe 1

Plaintiff mentions Flagg only once in his complaint, saying that he sent a copy of his grievance to Flagg. He also mentions John Doe 1 only once, saying that he gave an emergency note to John Doe 1. Thus, Plaintiff makes no valid claims for violation of constitutional rights against Flagg or John Doe 1. Accordingly, these Defendants will be dismissed without prejudice at this time.

### Disposition

**COUNTS 2 (battery)**, **3 (medical privacy)**, **5 (retaliation)** and **6 (deliberate indifference to medical needs)** survive threshold review and shall receive further consideration.

**IT IS HEREBY ORDERED** that **COUNTS 1, 4** and **7** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. **DEFENDANTS AARON, LOERA, WALKER, FLAGG, MEYER,** and **JOHN DOE 1** are **DISMISSED** without prejudice.

The Clerk of Court shall prepare for Defendants **SANTOS** and **STEWART**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the

complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown Defendants (John Doe 2 and John Doe 3) until such time as Plaintiff has identified them by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

**IT IS FURTHER ORDERED** that, should he wish to proceed on his claims in **COUNT 1,** Plaintiff shall file his First Amended Complaint, stating any facts which may exist to support a failure-to-protect claim and naming the individual Defendants directly responsible for the alleged deprivations in Count 1, within 30 days of the entry of this order (on or before September 10, 2012). An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original complaint. Thus, the First Amended Complaint must stand on its own, and in addition to Count 1, must contain the allegations in Counts 2, 3, 5, and 6, which shall receive further review as determined above. Plaintiff must also re-file any exhibits he wishes the Court to consider along with the First Amended Complaint. Failure to file an amended complaint shall result in the dismissal of Count 1 becoming a dismissal with prejudice. Review of Counts 2, 3, 5, and 6 shall proceed whether or not Plaintiff submits an amended complaint.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Stephen C. Williams for pretrial proceedings. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Williams** for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all the parties consent to such a referral*.

If judgment is rendered against Plaintiff and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: 8/9/2012**

s/ MICHAEL J. REAGAN
**United States District Judge**