IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ABEL LUCIO | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 11−cv−979−MJR−SCW |
| | ) |
| DR. SANTOS, J. STEWART, C. PITTS, | ) |
| and LT. FRIERSON | ) |
| | ) |
| Defendants. | ) |
| | ) |

# REPORT AND RECOMMENDATION

**Williams, Magistrate Judge:**

This § 1983 case, in which *pro se* Plaintiff Abel Lucio alleged deliberate indifference toward his medical needs, is before the Court on Defendant Dr. Santos' Motion for Summary Judgment (Doc. 60) for failure to exhaust administrative remedies. The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on whether Plaintiff exhausted his administrative remedies before filing suit. For the following reasons, the undersigned **RECOMMENDS** that the Court **DENY** the Motion.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 2, 2011, Abel Lucio, then an inmate at Pontiac Correctional Center in Illinois, brought the instant suit pursuant to 42 U.S.C. § 1983. (Doc. 1). Plaintiff alleges that he was sexually assaulted by other inmates on or around July 1, 2010 at Centralia Correctional Center. (Doc. 1). Plaintiff sought medical attention for his injuries there on July 2, 2010. (Doc. 1). However, when Santos attempted to examine Plaintiff's anus, Plaintiff objected. (Doc. 1). Plaintiff

alleges that Santos then forced the examination on him, which Plaintiff contends was just as humiliating and painful as the initial assault.  (Doc. 1).  Plaintiff then alleges that someone in the examination room broadcast his assault to other prisoners. (Doc. 1).  Plaintiff also claims that Santos began withholding his previously prescribed pain medication after this incident.  (Doc. 1).

Plaintiff, apparently erroneously believing that he had an affirmative obligation to prove that he exhausted his administrative remedies, preemptively filed a Response to Exhaustion of Remedies on February 21, 2013.  (Doc. 54).   Santos filed the present Motion on March 21, 2013.  (Doc. 60).   Plaintiff filed a Response on March 29, 2013.  (Doc. 67).  He filed an additional Response on April 24, 2013. (Doc. 74).   The Court held hearing on the matter on August 7, 2013.  A translator was present to assist Plaintiff.  Both parties attached multiple copies of Plaintiff's grievances to their various pleadings.  However, Santos' Motion referred to some grievances that were not previously in the record.  The undersigned filed those grievances as an exhibit.  (Doc. 93).

### PLAINTIFF'S GRIEVANCES

Plaintiff submitted an emergency grievance on July 22, 2010 based on his medical treatment and the denial of pain medication.  (Doc. 93, pp. 1-2).  He filed another grievance dated July 28, 2010, in which he complains of not receiving pain medication for his shoulder.  (Doc. 54-1, p. 4) (Doc. 67, p. 17).  In another grievance also dated July 28, 2010, Plaintiff again complains of several issues, including shoulder pain.  (Doc. 54-1, p. 6) (Doc. 74-2, p. 9).  Plaintiff submitted this grievance as an emergency, but it contains a response from the CAO indicating that the grievance was not substantiated as an emergency.  (Doc. 54-1, p. 6) (Doc. 74-2, p. 9).  Plaintiff submitted another relevant grievance on August 3, 2010, also seeking pain medication for his shoulder.  (Doc. 54-1, p. 10) (Doc. 74-2, p. 12).  No response is included with this grievance.  (Doc. 54-1, p. 10) (Doc. 74-2, p. 12).  Plaintiff filed a grievance on August 10, 2010, again complaining about his lack of pain medication and asking to speak to Assistant Warden Flagg.  (Doc. 63, p. 3).  Plaintiff filed a

grievance written entirely in Spanish on August 13, 2010 regarding the events around his July 1, 2010 and a disciplinary ticket he subsequently received. (Doc. 54-1, pp. 14-16). The undersigned requested the translator translate this document on the record at the hearing and determined that it was not relevant to Plaintiff's claims here. Plaintiff filed an emergency grievance on a blank piece of paper on August 20, 2010 based on deliberate indifference and seeking medical treatment. (Doc. 54-1, p. 17) (Doc. 74-2, p. 21). No response from this grievance is on file. Plaintiff filed a grievance dated August 23, 2010 with his counselor to check on the status of his other grievances. (Doc. 67, p. 14) (Doc. 74-2, p. 23). He received a response the next day stating that grievance review takes time. (Doc. 67, p. 14) (Doc. 74-2, p. 23). Plaintiff submitted a copy of his cumulative counseling summary, which shows that he received responses from prison counselors, Jason Fallert and Gina Feazel in July and August. (Doc. 74-4, p. 15). Neither testified at the August 7, 2013 hearing. The summary does not reflect that Plaintiff received responses from the grievance officer. (Doc. 74-4, p. 15).

IDOC transferred Plaintiff from Centralia to Pontiac Correctional Center on August 25, 2010. On September 2, 2010, Plaintiff again filed a grievance related to the events at issue here. (Doc. 67, p. 8). In lieu of filing it directly to the ARB, Plaintiff filed this September 2, 2010 grievance with his counselor. Plaintiff wrote a letter to Ms. Kelly of Pontiac Correctional Center asking for the status of all the grievances he filed at Centralia on October 25, 2010. (Doc. 54-1, p. 24). The letter is written on an affidavit form, sworn, signed, and notarized. (Doc. 54-1, p. 24). On November 30, 2010, Plaintiff gathered up copies of many of his grievances, including those discussed above, and sent them to the ARB because he had never received any responses. He included an affidavit testifying to the lack of response for more than sixty (60) days. (Doc 74-4, pp. 12-13). It appears that he continued to swear out affidavits and attempt to follow up about his grievances with various people into 2011. (Doc. 74-4, pp. 9-11).

LEGAL STANDARDS

*1.  Summary Judgment Standard*

Summary judgment — which is governed by FEDERAL RULE OF PROCEDURE 56 — is proper only if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  ***Dynegy Mktg. & Trade v. Multiut Corp.***, 648 F.3d 506, 517 (7th Cir. 2011) (citing FED. R. CIV. P. 56(a)).[1]  The party seeking summary judgment bears the initial burden of demonstrating — based on the pleadings, affidavits and/or information obtained via discovery — the lack of any genuine issue of material fact.  ***Celotex Corp. v. Catrett***, 477 U.S. 317, 323 (1986).

After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial."  ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 250 (1986).  ***See also Serednyj v. Beverly Healthcare, LLC***, 656 F.3d 540, 547 (7th Cir. 2011) ("When a summary judgment motion is submitted and supported by evidence . . . the nonmoving party may not rest on mere allegations or denials in its pleadings.")**.  A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. ***Anderson***, 477 U.S. at 248.  A mere scintilla of evidence supporting the non-movant's position is insufficient; a party will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion. ***Albiero v. City of Kankakee***, 246 F.3d 927, 931–32 (7th Cir. 2001). ***See also Steen v. Myers***, 486 F.3d 1017, 1022 (7th Cir. 2007) ("[S]ummary judgment is . . . the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.") (internal quotation marks omitted)**.  In other words, there is "no genuine issue of material fact when no reasonable jury could find in favor of the nonmoving

---

[1] Though Rule 56 was amended in 2010, the amendment did not change the summary judgment standard.  ***Sow v. Fortville Police Dept.***, 636 F.3d 293, 300 (7th Cir. 2011).

party." ***Van Antwerp v. City of Peoria***, 627 F.3d 295, 297 (7th Cir. 2010).  ***Accord Anderson***, 477 U.S. at 248 (finding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party).

### 2.  *PLRA's Exhaustion Requirement*

Lawsuits filed by prisoners are governed by 42 U.S.C. § 1997e, the Prison Litigation Reform Act ("PLRA").  The PLRA states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.[2]  **42 U.S.C. § 1997e(a).**  Failure to satisfy the PLRA's exhaustion requirement is an affirmative defense.  ***Pavey v. Conley***, 544 F.3d 739, 740 (7th Cir. 2008).

Where the defense has been raised, the Seventh Circuit has set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate.  (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over.  (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all the necessary findings of fact without being bound by (or even informed of) any of the findings made by the district court in determining that the prisoner had exhausted his administrative remedies.

***Id.*** at 742.

---

[2] It is clear that complaints about a prisoner's medical treatment are complaints about prison conditions for the purposes of the PLRA.  ***Witzke v. Femal***, 376 F.3d 744, 751 (7th Cir. 2004) (citing ***Wilson v. Weiter***, 501 U.S. 294, 299 n. 1 (1991) ("[I]f an individual prisoner is deprived of needed medical treatment, that is a condition of his confinement.")).

The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). An inmate must take all the steps required by the prison's grievance system to properly exhaust his administrative remedies. *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004); *Pozo v. McCaughtry*, 286 F.3d 1022, 1023–24 (7th Cir. 2002). The purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). When officials have been afforded this opportunity, the prisoner has properly exhausted all available remedies. *Id.* But if prison administrators explicitly rely on a procedural shortcoming (like failing to follow the prison's exhaustion deadlines) in rejecting a prisoner's grievance, that procedural shortcoming amounts to a failure to exhaust. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).

The contours of the exhaustion requirement are set by each state's prison grievance system, so the Court looks to Illinois law for the procedures relevant to the instant motion. *See Jones v. Bock*, 549 U.S. 199, 218 (2007).

### 3. Exhaustion Requirement under Illinois Law

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Illinois Department of Corrections' Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill. Admin. Code § 504.800 et seq.** The grievance procedures first require inmates to speak with their counselor about their complaint. **20 Ill. Admin. Code § 504.810(a).** If the counselor does not resolve the issue, the inmate must file a grievance form (directed to the Grievance Officer) within 60 days of the incident. *Id.* The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code § 504.810(b).**  If the 60-day deadline has passed, the inmate is still invited to grieve: "[I]f an offender can demonstrate that a grievance was not timely filed for good cause, the grievance shall be considered." **20 Ill. Admin. Code § 504.810(a).**

"The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer," who "shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code § 504.830(d).**  "If after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision." **20 Ill. Admin. Code § 504.850(a)**.  "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code § 504.850(e).**  "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances.  The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code § 504.850(f)**.

In certain circumstances, a prisoner may exhaust his remedies by filing a grievance directly with the ARB.  **20 Ill. Adm. Code § 504.870**.  Those circumstances include grievances addressing 1) placement in protective custody; 2) involuntary administration of psychotropic medication; 3) decisions regarding disciplinary proceedings that took place at an institution other than where the inmate currently resides; and 4) all other issues, with the exception of personal property issues, that occurred at a previous institution.  *Id.*

CONCLUSIONS OF LAW

Plaintiff has alleged that the grievance process was unavailable to him because he filed grievances and received no responses to them.  The evidence indicates that Plaintiff filed many grievances between July 2, 2010 and September 2, 2010 that relate to his claims against Santos.  Although there is some evidence in the record that Plaintiff received responses from his counselor to some of the grievances, Plaintiff testified that he continued to pursue the grievance procedure past that point.  Additionally, it is difficult for the undersigned to conclude based on the record which specific grievances had garnered responses and which were still in progress.  Although Plaintiff's counseling summary indicates that he received responses on three of his grievances from his counselor, the summary describes the contact as "other" and notes that IDOC had housed Plaintiff in segregation at the time.  The record contains no evidence on how those responses were delivered, whether through the mail or from the guards.  Only two of the responses (to the 8/23 grievance and an irrelevant grievance), are in the record at all.  Therefore, the undersigned cannot conclude that Plaintiff actually received the response to his medical grievance as stated in his counseling summary.  The August 24, 2010 response indicated that several of his grievances were still in progress, and implicitly acknowledges that staff had received Plaintiff's grievances.  The summary also notes that the warden returned three of the emergency grievances to Plaintiff.  Plaintiff testified that he pursued these grievances by sending them to his counselor after he received them back from the CAO.  The undersigned finds that Plaintiff had not received all of the responses due to him and that he continued to follow-up on the responses that he had received.

Plaintiff then transferred to Pontiac on August 25, 2010.  It does not appear that Plaintiff received any additional responses from his timely filed grievances after he transferred to Pontiac.  The undersigned finds that, with the exception of the September 2, 2010 grievance, Plaintiff properly began the administrative process while at Centralia.  The Illinois Administrative Code does not state that a transfer ends an institution's obligation to investigate grievances or

outline any alternative procedure for inmates who are transferred after the grievance process has properly begun. Plaintiff clearly tried to exhaust the grievance process by sending his grievances to the ARB in November 2010 and following up with other correspondence. Because Plaintiff never received responses to the Centralia grievances, the undersigned finds that the grievance process became unavailable to him as to the grievances filed prior to September 2, 2010.

As to the September 2, 2010 grievance, the undersigned finds that this grievance was not exhausted. Plaintiff attempted to file this grievance at Pontiac regarding the events at Centralia. Under the Illinois Administrative Code, this grievance had to be filed directly to the ARB. Instead Plaintiff filed it to his counselor. Therefore, this grievance could not have been properly exhausted. Santos has argued that the September 2, 2010 grievance is the only grievance that addresses the events stemming from the July 2, 2010 medical exam. However, the undersigned finds that Plaintiff raised his complaint about medical privacy is the July 22, 2010 grievance. Additionally, Plaintiff complained about how Santos conducted the exam in his August 20, 2010 grievance. The undersigned finds that the issues raised by the September 2, 2010 grievance were previously raised in other grievances to which Plaintiff never received a response. The September 2, 2010 is not dispositive as to those claims.

## CONCLUSION

For the foregoing reasons, it is respectfully **RECOMMENDED** that Defendant's Motions for Summary Judgment (Doc. 60) be **DENIED**. If this Report is adopted, then all of Plaintiff's claims against Defendant Santos remain in the case.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *See, e.g., Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir.

2004).  <u>Objections to this Report and Recommendation must be filed on or before August</u>

<u>28, 2013</u>.  *See* FED. R. CIV. P. 6(d); SDIL-LR 5.1(c).


**IT IS SO ORDERED.**
**DATE:  <u>August 9, 2013</u>**                     <u>/s/ *Stephen C. Williams*</u>
                                                                        **STEPHEN C. WILLIAMS**
                                                                        United States Magistrate Judge